

2005 Decisions

10-19-2005

# Interfaith Comm Orgn v. Honeywell Intl

Precedential or Non-Precedential: Precedential

Docket No. 04-3702

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Interfaith Comm Orgn v. Honeywell Intl" (2005). *2005 Decisions.* Paper 292.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/292

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3702

———

INTERFAITH COMMUNITY ORGANIZATION;
LAWRENCE BAKER; MARTHA WEBB HERRING;
MARGARET WEBB; REV. WINSTON CLARKE;
MARGARITA NAVAS

v.

HONEYWELL INTERNATIONAL, INC.
formerly known as ALLIEDSIGNAL, INC.;
RONED REALTY OF JERSEY CITY, INC.;
RONED REALTY OF UNION CITY, INC.;
W.R. GRACE & COMPANY; ECARG, INC.;
W.R. GRACE, LTD.

W.R. GRACE & COMPANY; ECARG, INC.;
W.R. GRACE, LTD.,

*Defendants/Third-Party Plaintiffs*

v.

HELLER-JERSEY CITY, L.L.C.;
HOME DEPOT, U.S.A.;
SEAMAN FURNITURE COMPANY, INC.,

*Third-Party Defendants*

HACKENSACK RIVERKEEPER, INC.;
WILLIAM SHEEHAN

v.

1

HONEYWELL INTERNATIONAL, INC.
f/k/a ALLIEDSIGNAL, INC.;
RONED REALTY OF JERSEY CITY, INC.;
RONED REALTY OF UNION CITY, INC.;
W.R. GRACE, LTD.

Honeywell International, Inc.,

*Appellant*

————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 95-cv-02097 & 00-cv-01451)
District Judge: Honorable Dennis M. Cavanaugh

————

Argued June 30, 2005

Before: RENDELL, BARRY,  and BECKER, *Circuit Judges*.

(Filed: October 19, 2005)

THOMAS H. MILCH
DANIEL A. CANTOR (ARGUED)
Arnold & Porter LLP
555 12th St., N.W.
Washington, DC 20004

RICHARD G. TARANTO
Farr & Taranto
1220 Nineteenth St., N.W.
Suite 800
Washington, DC 20036

DAVID W. FIELD
Lowenstein Sandler PC
65 Livingston Ave.
Roseland, NJ 07068

*Attorneys for Appellants*

BRUCE J. TERRIS
CAROLYN SMITH PRAVLIK
KATHLEEN L. MILLIAN (ARGUED)
SARAH A. ADAMS
LEMUEL B. THOMAS
Terris, Pravlik & Millian, LLP
1121 12th St., N.W.
Washington, DC 20005

    *Attorneys for Appellees*,
    *Interfaith Community Organization, et al.*

JOHN M. AGNELLO
Carella, Byrne, Bain, Gilfillan, Cecchi
        Stewart & Olstein
5 Becker Farm Road
Roseland, NJ 07068

CHRISTOPHER H. MARRARO
Wallace, King, Marraro & Branson
1050 Thomas Jefferson Street, N.W.
Suite 500
Washington, DC 20007

    *Attorneys for Appellees,*
    *W.R. Grace & Co., et al.*

―――

OPINION

―――

BECKER, *Circuit Judge*.

This case stems from a lawsuit filed by Interfaith Community Organization ("ICO") against Honeywell International seeking the cleanup of a heavily polluted area

3

along the banks of the Hackensack River in Northern New Jersey. ICO prevailed at trial, and, as a result, moved for attorney fees pursuant to 42 U.S.C. § 6972(e). The District Court, after holding a hearing on the motion, awarded ICO over $4.5 million in fees. Honeywell now appeals this award, raising a number of issues.

First, Honeywell argues that the District Court erred in awarding fees based on prevailing market rates in Washington, DC, where ICO's attorneys practiced, rather than in northern New Jersey, where the suit was litigated. We agree with Honeywell that, under normal circumstances, a prevailing party's attorneys should be compensated based on market rates in the vicinage of the litigation. However, if a prevailing party can show that it required the particular expertise of counsel from another vicinage, or that local counsel were unwilling to take on the litigation, then it will be entitled to compensation based on prevailing rates in the community in which its attorneys practice.

The District Court concluded that ICO had satisfied both of these exceptions. While we do not agree that ICO satisfied the first exception, we are satisfied that the District Court's finding that ICO had satisfied the second exception was not clearly erroneous. We will therefore affirm the District Court's decision to award compensation based on prevailing market rates in Washington, DC. Concomitantly, we find that ICO is entitled to compensation for the travel time of its attorneys as well as the reasonable fees of its local counsel.

Honeywell also submits that the District Court erred in its determination of prevailing market rates in Washington, DC. Specifically, Honeywell contends that the District Court erroneously awarded compensation based on a matrix of hourly rates produced by ICO's attorneys. While we question the accuracy of the matrix supplied by ICO's attorneys, we nonetheless conclude that the District Court's finding in this regard was not clearly erroneous. For this reason, we will affirm the District Court's determination of the appropriate hourly rates.

In addition, Honeywell challenges several aspects of the fee award as excessive or unjustified. Honeywell contends that ICO's attorneys and its expert witnesses devoted too many hours to a variety of tasks, and that the District Court failed to conduct

a sufficiently thorough review of the hours claimed by ICO's attorneys and expert witnesses. We agree that the District Court's review was inadequate, and hence we will vacate those aspects of the award challenged by Honeywell, and remand for further proceedings. We also agree that the fee request was excessive, but do not quantify our conclusion on this point, leaving its resolution to the District Court on remand.

Honeywell challenges the District Court's decision to award fees for the costs of overtime and temporary workers. We conclude that the District Court's decision to do so was not an abuse of discretion, and we will therefore affirm that aspect of the award. Honeywell also submits that the District Court erroneously awarded ICO compensation for time spent by experts who did not testify at trial. Because we conclude that the relevant statute permits such awards, we reject this contention.

Honeywell argues that the District Court erroneously awarded ICO fees for certain time spent by its attorneys litigating against the other defendants in this suit. We agree with Honeywell that the District Court failed to determine whether the time in question was actually related to ICO's suit against Honeywell, and will therefore vacate this aspect of the award and remand for further consideration. Finally, Honeywell challenges the District Court's decision to award ICO nearly $150,000 in photocopying costs based on a rate of twenty cents per page. Because we conclude that this rate is excessive, and because we find that the District Court did not conduct a thorough review of the number of copies claimed by ICO's attorneys, we will vacate this portion of the award and, again, remand for further proceedings.

I. Background Facts and Procedural History[1]

---

[1]A thorough recitation of the facts giving rise to the underlying action can be found in our recent decision in *Interfaith Community Organization v. Honeywell International, Inc.*, 399 F.3d 248 (3d Cir. 2005) (*ICO I*), *cert. denied*, 125 S. Ct. 2951 (2005).

Mutual Chemical Company of America, at one point the largest chrome manufacturer in the world, operated a plant in Jersey City, New Jersey from 1895 to 1954. During much of this time, Mutual dumped industrial waste residue containing high concentrations of hexavalent chromium, a known carcinogen, in wetlands along the banks of the Hackensack River. Over time, Mutual dumped around 1.5 million tons of waste, which ultimately developed into a separate land mass "15 to 20 feet deep, on some 34 acres." *ICO I*, 399 F.3d at 252. The dumping ended in 1954 when Mutual sold the plant to the Allied Corporation. Allied was later succeeded by AlliedSignal, Inc., and then by Honeywell. No significant effort was made to clean the site for almost three decades.

In 1982, the New Jersey Department of Environmental Protection (NJDEP) initiated efforts to clean up the site. After a largely unsuccessful attempt to fashion a temporary solution, NJDEP filed suit against AlliedSignal seeking to force the company to take action. In 1993, the parties agreed to a consent order under which AlliedSignal agreed to pay $60 million to clean up the site.

The cleanup was slow in getting started. As a result, ICO and five residents of the surrounding community brought suit against AlliedSignal and several other defendants under the citizen suit provisions of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972(a)(1)(B). That section permits individuals to bring suit against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." Following a two-week bench trial, the District Court ruled in favor of ICO and issued an injunction requiring Honeywell (which had succeeded AlliedSignal by that time) to clean up the site. A panel of this Court affirmed the District Court's decision, *see ICO I*, 399 F.3d at 252, and the Supreme Court denied *certiorari*, *see Honeywell Int'l, Inc. v. Interfaith Cmty. Org.*, 125 S. Ct. 2951 (2005).

In its opinion granting injunctive relief, the District Court also granted ICO attorney fees pursuant to 42 U.S.C. § 6972(e), which provides that, in actions brought under RCRA, the court

6

"may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."[2]  ICO then filed a Fee Application seeking reimbursement of $4,706,506.09 in fees; in a subsequent filing, it reduced its request to $4,587,990.22.  Following extensive briefing and a hearing, the District Court found that ICO was entitled to $4,530,327.00 in fees.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 336 F. Supp. 2d 370, 404 (D.N.J. 2004) Honeywell then filed a timely notice of appeal.

## II. Appellate Jurisdiction

The District Court properly exercised jurisdiction pursuant to the RCRA, 42 U.S.C. § 6972.  The parties submit that the August 26, 2004, order of the District Court was a "final decision" and that we therefore may exercise jurisdiction under 28 U.S.C. § 1291, which grants us jurisdiction to review "all final decisions of the district courts."  A fee award is not appealable until it is reduced to a definite amount.  *See Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir. 1998).  There is no dispute that the August 26, 2004, order reduced ICO's fee award to a definite amount for the period leading up to the verdict in this case.  However, in two subsequent orders dated August 30, 2004, and June 15, 2005, the District Court granted ICO additional fees to cover the expenses of litigating the first fee application.

In the June 15, 2005, order, the District Court granted ICO an additional $362,505.44 in fees.  Moreover, the District Court  indicated in its August 26, 2004, opinion that it would consider a later application for fees relating to the costs of monitoring the cleanup.  The question thus arises as to whether

---

[2]One of the initial defendants was ECARG, a subsidiary of W.R. Grace & Co., which owns part of the site.  ECARG filed a successful cross claim against Honeywell, and the District Court found that ECARG was therefore entitled to attorney fees as well.  In the same opinion granting ICO $4.5 million, the District Court granted ECARG over $7.3 million.  That award is not before us.

these later orders and declarations deprive us of jurisdiction, which we always have the independent duty to consider. *See Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1446 (3d Cir. 1991).[3]

The Court of Appeals for the Ninth Circuit addressed a similar set of facts in *Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994). In concluding that it had jurisdiction over a partial fee award, that Court observed:

> The facts weigh in favor of review now. Legal issues determined at this stage will smooth the process for future awards. The fees orders are final, and the defendants must pay the plaintiffs' counsel. The compliance period has not been limited to a definite time frame, thus review could be postponed for many years, if not granted now. The defendants suggest that the periodic motions before the district court could be grouped annually for possible appeals. We encourage the district court to group the motions in some such manner. However, we hold that the claim presently before us is reviewable.

---

[3]By letter dated August 30, 2004, ICO notified the District Court that it made a minor error in calculating the final fee award. (The Court held that ICO was not entitled to compensation for $541.08 relating to "local travel expenses," but it neglected to deduct this amount from its final award.) Honeywell suggests that the District Court may have treated this letter as a motion to amend the judgment pursuant to Rule 59(e) or a motion to correct a clerical mistake pursuant to Rule 60(a), either of which might call into question the validity of the notice of appeal. *See* Fed. R. App. P. 4(a)(4)(B)(i). However, there is no evidence in the record that the District Court construed ICO's letter as a motion under either Rule 59 or Rule 60, so we conclude that it is not a bar to our jurisdiction. Because the District Court does not appear to have acted on this letter, we will vacate the portion of the award relating to the error noted by ICO.

*Id.* at 1450.  We are persuaded by this logic.[4]  In a complex environmental action such as this, monitoring will likely continue well into the future.  Were we to conclude that § 1291 bars jurisdiction over awards such as this, we would delay meaningful appellate review for years if not decades.  Such a holding would contravene the Supreme Court's admonition that "the requirement of finality is to be given a 'practical rather than a technical construction.'" *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964) (citation omitted).

We therefore conclude that, in a complex and ongoing action such as this, § 1291 should not act as a bar to our exercise of jurisdiction over a fee award which resolves all fee claims for the period leading up to a verdict.  In so holding, we do not decide whether we will have jurisdiction over any possible appeals from future fee awards, but note our agreement with the sentiment expressed in *Gates* that a district court is well-advised to group such awards so as to allow for meaningful appellate review.

## III. The Appropriate Hourly Rate: The Forum Rule and its Exceptions

### A.  Introduction

The general jurisprudence governing the calculation of an award of attorney fees and the standard of appellate review is familiar, and we summarize it in the margin.[5]  What is less clear

---

[4]We recently distinguished *Gates* in *In re Diet Drugs Prods. Liab. Lit.*, 401 F.3d 143, 157 (3d Cir. 2005).  In *Diet Drugs*, we noted that "future adjustments (if any) to the [fee award being appealed] will include services that have been performed as well as those to be performed in the future."  *Id.* at 157 n.24.  Such is not the case here, as the August 26, 2004, order  definitively resolved ICO's fee request for the period in question.

[5]To fix the size of a prevailing party's fee award, a court must determine the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action.  *See Blum v. Stenson*, 465 U.S. 886, 888

from this jurisprudence is the question central to this appeal, which is whether courts should award fees to out-of-town counsel based on prevailing hourly rates in the forum of the litigation or those in the vicinage in which the fee applicant's attorneys practice law.

The District Court concluded that ICO's attorneys, who did not charge the organization for their services, were entitled to compensation based on prevailing rates in Washington, DC,

(1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The product of an attorney's hourly rate and the number of hours spent is referred to as the "lodestar." *See, e.g., Student Pub. Interest Research Group v. AT & T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir. 1988) ("*SPIRG*"); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986).

A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). To initially satisfy this burden, "the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Id.* (quoting *Hensley*, 461 U.S. at 433). If it wishes to challenge the fee award, the opposing party must then object "with sufficient specificity" to the request. *Id.* Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable. In reviewing a fee application, a district court must conduct "a thorough and searching analysis.*" Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001). Such an analysis is essential, for without it we cannot engage in meaningful appellate review.

On appeal, we review a district court's grant of a fee award for abuse of discretion. *See Rode*, 892 F.2d at 1182. In doing so, we will not upset a district court's factual determinations, including its determination of an attorney's reasonable hourly rate and the number of hours he or she reasonably worked on the case, unless we find them to be clearly erroneous. *Evans*, 273 F.3d at 358. However, we subject the legal standard employed by the district court in calculating these values to plenary review. *Id*.

where they practiced, rather than in northern New Jersey, the litigation forum. Honeywell contends that this conclusion was erroneous.

## B. The Relevant Market; The Forum Rate Rule

ICO was represented at trial by Terris, Pravlik & Millian ("the Terris firm" or "Terris"), a Washington, DC public-interest firm that specializes in complex environmental cases. We have held that public-interest law firms that typically charge clients below-market fees, or no fees at all, are nonetheless entitled to compensation based on prevailing market rates in the relevant community. *Student Pub. Interest Research Group v. AT & T Bell Labs.*, 842 F.2d 1436, 1448 (3d Cir. 1988) ("*SPIRG*").[6] In *SPIRG*, we concluded that this rule (the "Community Market Rate" rule) represented "the best compromise among the conflicting policies behind the fee shifting statutes" and that it was "the simplest, most workable rule [available]." *Id.*

What *SPIRG* did not resolve, however, was how we choose the "relevant community" for purposes of determining the appropriate billing rate for a public interest law firm. In this case, there are two obvious choices: Washington, DC, where the Terris firm is located, or northern New Jersey, where the underlying suit was litigated.

Two decades ago, we commissioned a Task Force on court-awarded attorney fees that addressed this and numerous other questions. The Task Force recommended that we adopt the "forum rate" rule, whereby an "out-of-town lawyer would receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the forum in which the litigation is lodged." *Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237, 261 (1985). The Task Force recommended that deviation from this rule be permitted "only when the need for 'the special expertise of counsel from a distant district' is shown or when local counsel are unwilling to handle the case." *Id*. (footnote omitted).

---

[6]Ironically, the attorney fee applicant in *SPIRG* was also the Terris firm.

In recommending that we adopt the forum rate rule, the Task Force observed that it was "contrary to current Third Circuit practices," *id.*, citing our decisions in *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985) and *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 590-91 (3d Cir. 1984). In *Fine Paper*, we reviewed a decision by the District Court for the Eastern District of Pennsylvania to award attorney fees based on a three-tiered hourly rate structure which did not take into account the market in which the attorney actually practiced. *See* 98 F.R.D. at 83. We reversed, finding that "the approach taken by the trial court in this case, of applying hypothetical national rates to all attorneys, regardless of the market rate they would command in the community in which they practice, was legal error." 751 F.2d at 591. We further observed:

> Our premise has been that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered.

*Id*. at 590.

The locution "the marketplace for legal services in which those services are offered" is somewhat opaque, and, in the wake of *Fine Paper*, panels of this Court have, consistent with the Task Force's recommendations, applied the forum rate rule. In *Public Interest Research Group v. Windall* ("*PIRG*"), we concluded that *Fine Paper* and other relevant cases did not "establish[] a per se rule in favor of the market rate for the community in which the law firm is located. Indeed, we think these cases eschew any rigid rule." 51 F.3d 1179, 1186 n.9 (3d Cir. 1995); *see SPIRG*, 842 F.2d at 1442 n.4 ("This opinion should not be construed, however, as endorsing a fee based upon an outside market rate at variance with the market rate of the site of the litigation, for we do not reach that issue."). In no case since the Task Force Report was issued have we set aside a decision employing the forum rate rule on the ground that earlier decisions require courts to award fees on the basis of prevailing rates in the community in which the attorney practices.

ICO nonetheless argues that *Fine Paper* held that the

relevant community for determining an attorney's billing rate is where the attorney practices, not the locus of the litigation. Thus, to the extent that these later cases conflict with our holding in *Fine Paper*, ICO claims that they impermissibly attempted to overrule that earlier decision. It is well settled in this Circuit that a three-judge panel may not overrule a decision by an earlier panel. *See* Third Circuit Internal Operating Procedure 9.1; *O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir. 1981). Thus, if ICO is correct that *Fine Paper* held that we look to an attorney's place of business to determine his or her hourly rate, then we must follow that decision. We do not think that it so holds.

As noted above, *Fine Paper* held that it was error for a district court to apply "hypothetical national rates" in determining the size of a fee award. Thus, *Fine Paper* does not answer the question we address today, which is whether a court should look to prevailing rates in the attorney's home community or the locus of the litigation in determining the appropriate compensation for an out-of-town attorney. We agree with the Task Force that, in most cases, the relevant rate is the prevailing rate in the forum of the litigation. We therefore hold that district courts in the Third Circuit should award attorney fees based on the "forum rate" rule as set forth in the Task Force Report.

As noted above, the forum rate rule recommended by the Task Force contains two exceptions: first, "when the need for 'the special expertise of counsel from a distant district' is shown"; and, second, "when local counsel are unwilling to handle the case." 108 F.R.D. at 261 (footnote omitted). Both of these exceptions are sensible. Thus, when a party can show that it qualifies for either exception, the Court may award attorney fees based on prevailing rates in the community in which the parties' attorneys practice. The District Court held that ICO satisfied both exceptions, and it therefore awarded fees based on prevailing rates in Washington, DC. We now turn to this issue.

C. Exceptions to the Forum Rate Rule

The District Court found that ICO had shown that it required the expertise of the Terris firm and that, moreover, no

13

firm in northern New Jersey would have been willing to represent ICO in its action against Honeywell. A decision by a district court that a party qualifies for one or both of the exceptions to the forum rate rule is a factual finding that we may not upset unless we find it to be clearly erroneous; however, we will not affirm if the District Court failed to make the necessary factual findings.

### 1. Whether ICO demonstrated a need for "the special expertise of counsel from a distant district"

The District Court's discussion of the first exception is extremely brief. It noted that Terris had extensive experience litigating similar environmental suits, and that all other parties involved retained Washington, DC counsel. Yet in so doing, the District Court failed to address the precise issue, namely the extent to which other counsel practicing in northern New Jersey did or did not possess "special expertise" in order to represent ICO. The fact that Terris was suited to such representation does not imply that firms from northern New Jersey were not. Similarly, the fact that all parties retained counsel from Washington, DC is not directly relevant to the question whether New Jersey counsel had the necessary expertise to represent ICO; indeed, as Honeywell notes, its trial counsel was from New Jersey.

The record is devoid of any evidence that ICO conducted a significant search for counsel with the ability to handle this case. According to an affidavit filed by Joseph Morris, ICO's Lead Organizer, ICO contacted a very small number of attorneys as part of its efforts to retain counsel in a cognate case, *ICO v. Shinn*. Morris's affidavit recounted that he approached and was turned down by Christopher Placitella of Wilentz, Goldman & Spitzer; Father Eugene Squeo of Schiller Squeo and Hartnett; Edward Lloyd of the Rutgers Environmental Law Clinic, who served as ICO's local counsel in this case; Charles Warren of Berle Kass and Case in New York City; and Barbara Olshansky of the Environmental Defense Fund in New York City.

Given that there are hundreds of firms in northern New Jersey that identify themselves as practicing environmental law, we do not think that such a search is adequate to justify

14

concluding that ICO needed to turn to Terris because no attorney in the region had the necessary expertise to represent ICO in this action. Indeed, we would have great difficulty in accepting that no attorney in northern New Jersey possessed the ability—as opposed to the willingness—to handle a case such as this. We therefore agree with Honeywell that ICO failed to make the necessary showing, and that the District Court failed to make the necessary finding, that no local counsel had the expertise necessary to represent ICO. We thus cannot affirm the District Court's conclusion that ICO qualified for the first exception.

### 2. Whether ICO demonstrated that local counsel were "unwilling to handle the case"

In contrast, the District Court did make the proper finding with regard to the second exception, and we will therefore review this determination for clear error.[7] In concluding that ICO had shown that local counsel were "unwilling to handle the case," the District Court relied primarily on the Morris affidavit, which recounted the organization's efforts to find counsel in *Shinn*, a lawsuit filed against various state officials in an effort to compel government action to clean up chromium pollution in Hudson County, New Jersey. As discussed *supra*, Morris stated that ICO contacted at least five attorneys in northern New Jersey and New York, all of whom declined to take on the case.

---

[7]Honeywell argues that the District Court applied an incorrect legal standard in "holding that a fee applicant can meet its burden of proving the unavailability of forum counsel where the fee applicant has made no attempt to retain forum counsel in the case at issue" and that we therefore may exercise *de novo* review. We disagree. The District Court applied the proper legal standard in that it focused its analysis on whether ICO had shown that "local counsel are unwilling to handle the case." In challenging the District Court's reliance on the Morris Affidavit, Honeywell is, in essence, challenging the District Court's weighing of the evidence in making a factual determination.

15

Morris's affidavit stated that he did not recall the specific justifications given by the attorneys for declining to represent the organization, but it did list his "general impressions" of their reasons: "the cases involved too much political risk (Governor Florio would be a named defendant), or too much intensive factual work, or too unfamiliar legal terrain. Since ICO could not afford to pay attorney's fees or costs, the firms also expressed concern over absorbing the costs associated with litigating a case which they feared might become very large and expensive."

As a result of its inability to find representation, ICO filed *Shinn pro se.* After it became clear that it could not proceed on that basis, the organization contacted the Terris firm, which agreed to take on the case. Soon after it agreed to represent ICO in *Shinn*, Terris agreed to represent ICO in this action.[8]

The District Court relied primarily on Morris's affidavit in concluding that ICO had shown that local counsel were unwilling to represent it in this action. In addition, Terris points to an affidavit from Edward Lloyd, who previously served as the director of the Environmental Law Clinic at Rutgers School of Law and acted as local counsel for Terris. Lloyd stated:

> 11. At the time this suit was initiated, I was not aware of any attorneys or law firms who would have been willing to assume the risks of litigating cases of this type, particularly without

---

[8]ICO argues that its efforts to recruit counsel in *Shinn* were part of a larger effort to obtain counsel to represent it in suits seeking to clean up chromium pollution in Hudson County, and that these efforts were not limited to *Shinn*. While it concedes that Terris partner Bruce Terris admitted at oral argument that ICO's efforts were limited to *Shinn*, it claims that he "mis-spoke." The District Court found that ICO's earlier efforts were limited to the *Shinn* case and not part of a broader effort. Because we conclude that the District Court's conclusion that ICO satisfied the second exception was not clearly erroneous, we need not address this question.

16

contemporaneous payment for their services and expenses. Nor was I aware of any New Jersey firms with any experience litigating environmental issues on behalf of plaintiffs. I was aware of a few sole practitioners who litigated environmental issues on behalf of plaintiffs. However, none of them was in a position to handle litigation of this magnitude, particularly without compensation for even their out-of-pocket expenses.

12. In fact, my experience through 29 years of the practice of environmental law in New Jersey is that the Terris law firm and the Rutgers Environmental Law Clinic are the only two firms that have brought citizen suit cases in federal court on behalf of citizens without contemporaneous payment of fees and expenses. The only exception of which I am aware is a single citizen suit during this period of time brought by a small Newark firm on behalf of a labor union. The firm has since broken up. I do not know if the labor union paid the attorneys for this suit. The suit did not involve anywhere near the size, complexity and cost of this litigation.

While the Lloyd Affidavit provides significant support for ICO's contention that local counsel were unwilling to represent it in this action, the District Court did not mention it in concluding that ICO satisfied the second exception.

Honeywell argues that the District Court erred in finding that ICO had satisfied the second exception absent a showing that ICO sought counsel in this particular case. In particular, Honeywell claims that it was unreasonable to rely on the unwillingness of local counsel to represent ICO in *Shinn*, as that case involved a factor—political risk—not present here. We agree.[9] However, ICO submits that political risk was just one of

[9]ICO argues that this case involved political risk as well, inasmuch as it is "an indictment of the state's mishandling" of the efforts to clean up the site. This seems dubious. At all events, the

17

the reasons given by the various attorneys contacted by Morris for declining to participate in that action.

We do not believe that the District Court's conclusion that ICO satisfied the second exception to the forum rate rule is clearly erroneous. What persuades us is the Lloyd affidavit, insofar as it states that no attorney in northern New Jersey would have been willing to handle this case without an immediate advance of out of pocket costs which, in this case, foreseeably amounted to over one million dollars. In this respect, the Terris firm is a "rare bird."

Because we conclude that the District Court's determination that ICO satisfied the second exception to the forum rate rule was not clearly erroneous, we will affirm its decision to award fees based on prevailing rates in Washington, DC.

## D. Determination of the Appropriate Hourly Rate for the District of Columbia; the Laffey Matrix

We have settled that to determine "the prevailing market rates in the relevant community," a court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (citations and internal quotations omitted). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard." *Id.* (citations and internal quotations omitted) (alterations in original). In its fee application, ICO requested compensation based on an updated version of the so-called "Laffey Matrix," and the briefing and arguments on the hourly rate issue have been totally within the Laffey Matrix framework. Accordingly, for better or worse, our discussion of that issue will be within the framework as well.

---

political risk involved in *Shinn* was certainly greater than the risk involved in this case.

18

The Laffey Matrix, which takes its name from the case in which it was first employed, *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (*en banc*) ("*SOCM*"), provides billing rates for attorneys in the Washington, DC market with various degrees of experience. The initial Laffey Matrix, set forth in the margin,[10] was based on prevailing market rates from 1981-1982. The parties do not dispute that the Laffey Matrix was a valid index of prevailing rates in Washington, DC at that time.

The Laffey Matrix was subsequently updated through 1989 pursuant to a settlement by the parties in *SOCM*. *See Trout v. Ball*, 705 F. Supp. 705, 709 n.10 (D.D.C. 1989). The use of the *SOCM*-updated Laffey Matrix has subsequently been approved by judges on the District Court for the District of Columbia. *See, e.g.*, *id.* ("Although the updated matrix was never expressly approved by the court because the parties settled the issue of fees, it does provide an accurate and updated schedule of attorney fees in this District."); *Sexcius v. District of*

---

[10]The original Laffey Matrix reimbursed attorneys at the following rates:

- $ 175 an hour for very experienced federal court litigators, *i.e.*, lawyers in their 20th year or more after graduation from law school;
- $ 150 an hour for experienced federal court litigators in their 11th through 19th years after law school graduation;
- $ 125 an hour for experienced federal court litigators in their 8th through 10th years after graduation from law school;
- $ 100 an hour for senior associates, *i.e.*, 4 to 7 years after graduation from law school; and
- $ 75 an hour for junior associates, *i.e.*, 1 to 3 years after law school graduation.

572 F. Supp. at 371.

*Columbia*, 839 F. Supp. 919, 924 (D.D.C. 1993). In its fee application, ICO requested payment based on the rates in the *SOCM*-updated Laffey Matrix, further updated to 2003-2004. In updating the matrix to account for inflation from 1989-2003, ICO relied on the legal services component of the nationwide Consumer Price Index ("the Legal Services Index"), a measure of inflation in the cost of legal services maintained by the Bureau of Labor Statistics. We rescribe in the margin the rates produced by ICO's methodology.[11]

Honeywell argued in the District Court and before us that the proper measure of hourly rates in Washington, DC can be found in a separate matrix maintained by the Office of the United States Attorney for the District of Columbia. That matrix is based on the original Laffey Matrix from 1981-1982, also adjusted for inflation. However, in updating this matrix, the U.S. Attorney's Office uses the Consumer Price Index ("CPI") for the District of Columbia. But there is no available data on the legal services component of the District of Columbia CPI. Since the District of Columbia CPI is typically lower than the Legal Services Index, the rates in the U.S. Attorney's Matrix, also rescribed in the margin, are lower than those in ICO's proposed matrix.[12] The use of the U.S. Attorney's Laffey

---

[11]

| Years of Attorney Experience | Hourly Rate |
| --- | --- |
| 20+ | $549 |
| 11-19 | $456 |
| 8-10 | $404 |
| 4-7 | $280 |
| 1-3 | $228 |
| paralegals | $124 |

[12]The U.S. Attorney's Matrix yields the following rates for 2003-2004:

| Years of Attorney Experience | Hourly Rate |
| --- | --- |
| 20+ | $380 |
| 11-19 | $335 |
| 8-10 | $270 |
| 4-7 | $220 |
| 1-3 | $180 |

Matrix as a measure of billing rates in Washington, DC has been approved on numerous occasions by courts in the District of Columbia Circuit. *E.g.*, *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995); *Piper v. United States Dep't of Justice*, 339 F. Supp. 2d 13, 24 (D.D.C. 2004).

The District Court reviewed both indices and decided that ICO's represented a better measure of prevailing rates in Washington, DC. In so doing, it relied on a decision by the District Court for the District of Columbia, *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), which compared the U.S. Attorney's Laffey Matrix with a matrix similar to that put forward by ICO in this case and concluded that the latter method was superior. *Salazar* is one of the few decisions approving the use of this approach, and it is, according to ICO, the only decision (prior to the District Court decision in this case) comparing the two approaches.

The determination of the appropriate billing rate is a factual finding which we review for clear error. *See SPIRG*, 842 F.2d at 1455-56; *Black Grievance Committee v. Philadelphia Electric Co.*, 802 F.2d 648, 652 (3d Cir. 1986), *vacated on other grounds by* 483 U.S. 1015 (1987). Both parties agree that the original Laffey Matrix is an appropriate starting point from which to determine prevailing billing rates in Washington, DC. As stated above, the updated Laffey Matrix relied on in *SOCM* has been met with approval by judges in the District of Columbia Circuit.[13] But the question remains whether ICO's method of updating the Laffey Matrix is acceptable.

Honeywell contends that "the overwhelming use of the U.S. Attorney Laffey matrix . . . by federal courts in the District of Columbia" requires that we employ the U.S. Attorney Matrix as well. The District Court rejected this argument, observing: "Moreover, that the number of cases approving the U.S. Attorney's matrix is large is of no moment, because those fee applicants did not challenge the appropriateness of the U.S.

—————————————

        paralegal                       $105

[13]Obviously we are not bound by the decisions of these judges, but we certainly accord them substantial weight on this peculiarly local question.

Attorney's matrix." 336 F. Supp. 2d at 388 n.4. We do not believe that the number of cases approving the U.S. Attorney's matrix is "of no moment," but we do agree with ICO that the simple fact that numerous courts in the District of Columbia have upheld the U.S. Attorney's Matrix as a reasonable measure of billing rates is not a sufficient ground for us to conclude that reliance by the District Court on ICO's updated Laffey Matrix was clearly erroneous.

In this regard, it is relevant that in none of those decisions cited by Honeywell did the court engage in a comparison between the competing methodologies advanced in this case. Indeed, the District Court for the District of Columbia recently observed that the U.S. Attorney's Laffey Matrix "is a concession by that office of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorney fees. That concession relieves that office from having to litigate the market rate in the hundreds of fee-shifting cases that it defends." *See Adolph Coors Co. v. Truck Ins. Exch.*, Civ. No. 04-2150, 2005 U.S. Dist. LEXIS 17538, at *11-*12 (D.D.C. Aug. 23, 2005).

Still, we recognize that the burden is on ICO to show that the rates it proposes are comparable to the "'rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Loughner*, 260 F.3d at 180 (3d Cir. 2001) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). As with the question whether ICO satisfied the exceptions to the forum rate rule, we are underwhelmed by the evidence relied on by the District Court in concluding that the rates ICO proposed satisfied this standard. That said, and while we recognize that the statistics ICO relies on are in no way specific to attorneys who practice environmental law, we are satisfied that the methodology relied on by ICO in updating the Laffey Matrix was reasonable.

In addition, we note that ICO submitted the results of a 2002 survey from the *National Law Journal* showing high and low billing rates for numerous firms (including several in Washington, DC) that are largely consistent with the rates it proposes in its matrix. While the article, standing alone, provides little support for ICO's proposed matrix, it does further bolster our conclusion, which is that the District Court's

findings were not clearly erroneous.[14] Accordingly, on remand, the District Court may use ICO's proffered Laffey Matrix to calculate the Terris firm's hourly rates.

## IV. Travel Time and Costs of Local Counsel

Honeywell challenges the District Court's decision to award ICO fees for its costs of travel and travel time, as well as fees for its local counsel, Edward Lloyd. We agree that, under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel. However, where forum counsel are unwilling to represent the plaintiff, such costs are compensable. Therefore, because we have affirmed the District Court's conclusion that forum counsel were unwilling to represent ICO in this action, we affirm the District Court's decision to award compensation for travel time, travel costs, and the costs of local counsel. Of course, local counsel should be compensated based on prevailing rates in the forum of the litigation.

Honeywell also disputes the District Court's determination that ICO's attorneys were entitled to compensation for their travel time at their full billing rate. According to Honeywell, the District Court should have compensated the travel time of ICO's attorneys at 50% of their regular rate. In support, Honeywell notes that some courts in other jurisdictions have held that travel time should not be compensated at the same rate as time spent engaged in meaningful work. *E.g.*, *Clark v. Phillips*, 965 F. Supp. 331, 336 (N.D.N.Y. 1997). In response, ICO argues that the opportunity cost of travel time is the same as that of time spent working on the case, and that hours spent traveling should be compensated at

---

[14]Despite so declaring, we add the observation that any index that is updated based on a statistical measure of inflation—rather than regular recalibration in light of prevailing rates—will tend to diminish in accuracy over time. For this reason, district courts in this Circuit should be assiduous in evaluating fee requests in light of *all* the evidence.

23

an attorney's full rate.

We addressed this issue in *Planned Parenthood of Central New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 267-68 (3d Cir. 2002). In that case, we held that, in order to determine the rate at which attorneys may be compensated for their travel time, "a court must look to the practice in the local community." *Id*. at 267. In this case, since we have concluded that the Terris firm is entitled to compensation based on prevailing rates in Washington, DC, the District Court should have determined whether attorneys in Washington are typically compensated for their travel time at their full billing rate. The District Court did not make any such finding, so we will vacate and remand this portion of the award.[15]

## V. ICO's Claimed Hours

A prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *PIRG*, 51 F.3d at 1188 (citation omitted). Thus, in reviewing the hours claimed in a fee application, a district court must conduct a "thorough and searching analysis" to identify such charges. *Evans*, 273 F.3d at 362. The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989). But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request.

Honeywell argues that the District Court erred in refusing to slash the size of Terris's fee award to account for billing that was "excessive, duplicative, or otherwise

---

[15]To the extent that ICO's attorneys did actual work on this case while traveling, that time should be incorporated into other portions of the fee award.

redundant." In Honeywell's submission, the following *charges* claimed by ICO are grossly excessive:

- 1,058 hours spent preparing proposed pretrial findings of fact and conclusions of law

- 471 hours spent preparing post-trial findings of fact and conclusions of law

- More than 890 hours "dedicated to matters related to the pretrial order"

- More than 730 hours of attorney time spent reviewing documents.

- More than 360 hours preparing a motion for summary judgment

- More than 2,790 hours of paralegal time[16]

Honeywell objected to these charges before the District Court. In support of its objections, Honeywell submitted an affidavit prepared by Michael Caffrey, an attorney with the New Jersey law firm of Lowenstein Sandler, Honeywell's trial counsel, detailing the results of a review he conducted of ICO's submission. Caffrey's affidavit compared the time claimed by ICO for the above tasks with what he concluded would have been a reasonable amount of time for the same work.

Where Caffrey concluded that ICO's attorneys had spent more time than required on a given task, he "reduced" the hours to what he considered to be an appropriate level. He offered justifications for his proposed reductions, although in many cases the explanation he offered consisted of the word "Excessive." On appeal, Honeywell argues that the District

---

[16]The District Court deducted 91.21 hours from the paralegal time for "essentially clerical tasks." *See* 336 F. Supp. 2d at 393.

Court erred in refusing to reduce ICO's award in accordance with the recommendations in Caffrey's affidavit. In addition, it argues that the findings made by the District Court in granting ICO's fee request were inadequate.[17]

In support of its excessiveness argument, Honeywell concentrates on a number of areas, starting with the 1,529 hours spent on preparing findings of fact and conclusions of law. That amounts to approximately thirty-eight forty-hour weeks, a sum that seems to us to be staggering, and well beyond the pale. This amount represents, under Honeywell's calculations, over four hours for drafting each page, as well as 471 hours to update, post-trial, the proposals which were prepared pretrial in 1058 hours. This also is excessive, especially in light of the fact that the pre-trial and post-trial findings of fact and conclusions of law were so similar. As Honeywell points out:

> [M]ore than 130 out of 165 of Plaintiff's proposed post-trial conclusions of law were identical to its pretrial conclusions of law. And, more than 330 out of 494 of Plaintiff's proposed post-trial findings of fact were identical or substantively identical (with the exception of the substitution of a trial record citation) to Plaintiff's pretrial proposed findings of fact.

---

[17]Following argument in this case, the parties entered into an agreement pursuant to which Honeywell agreed to make a partial payment of $1,380,148.79 prior to resolution of the appeal, that being the amount that Honeywell suggested was the maximum reasonable and necessary fee award. Under the terms of the stipulation, which has been approved, the judgment entered pursuant thereto is without prejudice to defendant-appellant's objections and arguments with regard to any fee award (including the fee award that is the subject of this appeal) or request for fees and costs by plaintiffs-appellees or any other party or third party. Moreover, if, when the proper amount of attorney fees and costs is ultimately resolved, the ultimate award of fees and costs exceeds $1,380,148.79, the $1,380,148.79 being paid pursuant to the stipulation is to be subtracted from the award.

Furthermore, Honeywell notes that the overall time spent preparing the findings of fact includes 228 hours of partner time, which, under the matrix adopted by the District Court, is compensable at a rate of $456 per hour. That factor seems to us to warrant close scrutiny.

While the trial was indeed protracted, and the record huge, there must be some limit. We need not decide these points because we agree with Honeywell's second argument: that the District Court's review of the hours claimed by ICO's attorneys was simply inadequate. However, we do express our reaction for the benefit of the District Court which will have to address these issues on remand.

In most respects, the District Court approved the challenged aspects of the fee award with little more than a sentence. For example, in approving the 471 hours spent preparing post-trial findings of fact and conclusions of law, the District Court observed:

> Honeywell asserts that the time expended on the preparation of post-trial findings was excessive and should be reduced to 200 hours. However, Honeywell provides no justification for this figure. Accordingly, this Court concludes that the hours expended by Plaintiffs are reasonable.

336 F. Supp. 2d at 391. The District Court appears to have misapprehended its role, improperly placing a burden of proof on Honeywell that simply does not exist.[18] While it is true that,

---

[18]For instance, in regard to the time spent on the pretrial proposed findings of fact, the Court observed:

> Honeywell asserts that the time spent in preparing Plaintiff's pretrial findings of fact and conclusions of law should be excluded because this document was not ultimately required by the Court. However, until October 16, 2002, when this Court decided to make such pretrial findings optional, the deadline for the

27

as we have noted, the "district court cannot decrease a fee award based on factors not raised at all by the adverse party," *Loughner*, 260 F.3d at 178 (citations and internal quotations omitted), nonetheless, the burden remains on the party requesting the fee to prove its reasonableness, and the court has "a positive and affirmative function in the fee fixing process, not merely a passive role," *id.* Here, the District Court's conclusory reasoning constituted an abdication of that function.

Where an opposing party lodges a sufficiently specific objection to an aspect of a fee award, the burden is on the party requesting the fees to justify the size of its award. In determining whether the moving party has met its burden, we have stressed that "it is necessary that the [District] Court 'go

> submission of each party's pretrial findings was October 24, 2002. Clearly, it is reasonable for Plaintiff to have substantially prepared their pretrial findings by October 16, 2002. Furthermore, since the preparation of the pretrial document advanced Plaintiff's preparation of their post trial findings, it is substantially related to their successful RCRA substantial endangerment claim and is therefore recoverable.

336 F. Supp. 2d at 391. The Court later found:

> Likewise, Honeywell makes the assertion that the number of hours spent preparing the Pretrial Order should be reduced to 300 hours but provides no justification for this figure. Nor does Honeywell provide any justification for their assertion that the document review time should be reduced to 350 hours or that the time spent preparing the second motion for summary judgment should be reduced to 100 hours. Accordingly, this Court will allow reimbursement [to] Plaintiffs for the actual time expended on these activities.

*Id* at 391-92.

line, by line, by line' through the billing records supporting the fee request." *Evans*, 273 F.3d at 362. Where the opinion of the District Court "is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000). Such is the case here. For this reason, we will vacate the award in this case with respect to the six items Honeywell challenges in its appeal.

This is a voluminous and protracted case, and we are not unmindful of the difficult job the District Court faces in reviewing the fee application. In performing this task, the District Court is entitled to help from the fee objector. Indeed, we have observed:

> [T]he adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable. The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request.

*Bell*, 884 F.2d at 720 (footnote omitted). Honeywell objected to numerous aspects of ICO's fee request on the ground that the time spent by specific attorneys was excessive. It could (and should) have been more specific. Still, as Honeywell points out, *Bell* and later cases have accepted as sufficient objections of a more general nature than the ones at issue here. *E.g.*, *Bell*, 884 F.2d. at 721; *Planned Parenthood*, 297 F.3d at 269.

Thus, since Honeywell carried its burden in objecting to certain aspects of the proposed fee award, ICO had an obligation to justify those portions of the award, and the District Court had an obligation to conduct a searching review of ICO's request. It did not, hence we vacate and remand for further proceedings.

VI. Work Related to Other Defendants

The District Court found that ICO could only be compensated by Honeywell for time spent by ICO's attorneys "in furtherance of ICO's successful RCRA claim against Honeywell." 336 F. Supp. 2d at 390. Honeywell contends that the court failed to exclude six charges ICO's attorneys claimed for work related to other defendants in the action. ICO concedes that Honeywell is correct with respect to five of the charges. Our judgment will reflect that concession and hence we need deal only with the sixth, which involves two *in limine* motions filed by W.R. Grace & Co., one of the defendants in the action, *see supra* note 2. ICO argues that both of these motions, if granted, would have weakened ICO's case against Honeywell, and that it was therefore justified in seeking reimbursement from Honeywell.

For instance, Grace moved to limit the evidence that could be used at trial relating to soil clean up standards; ICO alleges that such a limitation would have weakened its case against Honeywell. If true, ICO's contention would be justified. But it does not appear from the record that the District Court considered whether the time spent contesting either motion was truly "in furtherance of ICO's successful RCRA claim against Honeywell." For this reason, we will vacate and remand the award with respect to these motions so that the District Court may make such a determination.

## VII. ICO's Expert Witnesses

### A. Testifying Experts

Honeywell challenges the District Court's decision to award more than $780,000 for the time and costs of three expert witnesses and their respective business entities, *i.e.* the award of (1) $389,807.59 for the work of Dr. Bruce Bell and Carpenter Environmental Associates; (2) $194,491.54 for the work of Dr. Ben Ross and Disposal Safety Incorporated (DSI); and (3) $184,492.31 for the work of Dr. Cheryl Montgomery and Cambridge Environmental.

As with the time claimed by counsel, the prevailing party bears the burden of justifying the time claimed by its expert witnesses. Similarly, the district court has the obligation to

conduct a thorough and searching review of the time claimed by a prevailing party's experts. In this case, the District Court failed to do so. While the District Court did address one substantive argument raised by Honeywell (that ICO and ECARG should have retained the same experts), its analysis of the hours claimed by ICO's three experts was limited to the following:

> The work performed by the experts retained by Plaintiff in this matter was vital to their success at trial. The work of the experts greatly assisted this Court in evaluating some of the more technical aspects of the litigation, and was also necessary to rebut the technical information presented by Honeywell. Accordingly, this Court finds that the work done by each of ICO's experts was reasonable based on the length and complexity of this litigation.

336 F. Supp. 2d at 398.

The fact that the work of the experts assisted the Court does not, by itself, imply that the amount of time claimed by the three experts was reasonable. Rather, as was the case with the time ICO's attorneys claimed, the District Court has an obligation to "'go line, by line, by line' through the billing records supporting the fee request." *Evans*, 273 F.3d at 362. Similarly, the Court must give us a sufficiently detailed explanation of its reasoning so that we can engage in meaningful appellate review. Since it failed to do so, we will vacate the award of fees for the three experts (and their respective business entities).

We also note that duplicative billing may have occurred. For example, Dr. Montgomery claimed that it took her 246 hours to prepare an expert report because she needed to review documents, but Dr. Montgomery separately billed another 570 hours for document review.

## B. Non-testifying Experts

ICO requested reimbursement for costs incurred by three additional experts who assisted with trial preparation but did not

testify. The District Court correctly observed that the law is not entirely clear as to whether a prevailing party may be compensated for the time of non-testifying experts, but it resolved the uncertainty in favor of granting ICO's request. It reasoned that, due to the complex and technical nature of the case, it was necessary for ICO's attorneys to consult with outside experts, even if those experts did not ultimately testify.

RCRA provides that the court "may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate." 42 U.S.C. § 6972(e). Honeywell submits that, since non-testifying experts are neither attorneys nor expert witnesses, a prevailing party may not be reimbursed for the costs of their time.

We have held that the fees of non-testifying experts are compensable in contempt proceedings, *see Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942-43 (3d Cir. 1995), but we have not yet determined whether a prevailing party is entitled to compensation for the costs of non-testifying experts under a fee-shifting statute. The circuit caselaw is, for the most part, not on point, and is a mixed bag.

The Court of Appeals for the District of Columbia Circuit addressed this question in a case involving a fee award under a provision of the Clean Air Act, 42 U.S.C. § 7607(d), which is virtually identical to the statute at issue here. *See Sierra Club v. E.P.A.*, 769 F.2d 796, 812 (D.C. Cir. 1985). In *Sierra Club*, the Court concluded that a party could not be reimbursed for the cost of hiring a non-testifying expert. It observed:

> Mr. Lazaro [the non-testifying expert] is obviously not an attorney. He is also not an "expert witness," since review of the regulations was undertaken in this case on the administrative record without any new hearings before this or any other court. *Cf. Asarco, Inc. v. EPA*, 616 F.2d 1153, 1157-61 (9th Cir.1980) (allowing limited use of expert testimony before District Court in reviewing order by EPA). This leaves only the general rubric of "costs" under which to compensate petitioners for making use of Mr. Lazaro's services. Those

32

services do not fall under the traditional concept of costs . . . .

*Id.*; *see also Natural Resources Defense Council, Inc. v. E.P.A.*, 1998 U.S. App. Lexis 26041 (D.C. Cir. Sept. 3, 1998) (*per curiam*) (unpublished opinion). *Sierra Club* is only partially relevant to our analysis, however, because the opposing party in that case was the federal government. Thus, the fee-shifting statute acted as a waiver of sovereign immunity, and the Court was obligated to interpret the language of the statute in light of the principle that "waivers of sovereign immunity are to be construed narrowly." *See Sierra Club*, 769 F.2d at 812 (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)).

The Court of Appeals for the Eleventh Circuit, in contrast, has held that the fees of non-testifying experts are recoverable. *See Sierra Club v. Hankinson,* 351 F.3d 1358 (11th Cir. 2003). *Hankinson* interpreted 33 U.S.C. § 1365(d), a fee-shifting statute which is virtually identical to 42 U.S.C. § 6972(e). Yet *Hankinson* is not directly on point either, as the fees in that case were incurred during the monitoring of a consent decree. Thus, since there was no ongoing judicial proceeding, all experts involved were "non-testifying." Indeed, the *Hankinson* Court relied on this fact to distinguish *Sierra Club v. E.P.A. See Hankinson*, 351 F.3d at 1363.

The Supreme Court has held that the phrase "reasonable attorney's fee" can encompass work performed by individuals who are not attorneys. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989). In *Jenkins*, the Court observed, "Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney." *Id.* In light of *Jenkins*, ICO has a strong claim that it is entitled to compensation for the work of the non-testifying experts, as they assisted the attorneys in preparing their ultimate work product. This view finds support in a decision of the Court of Appeals for the Seventh Circuit holding that, while the fees of testifying witnesses were not recoverable as attorney fees under a statute that did not separately reference expert witnesses, the fees of non-testifying witnesses were. That Court observed:

> Experts are not only hired to testify; sometimes
> they are hired, also or instead, to educate counsel
> in a technical matter germane to the suit. The time
> so spent by the expert is a substitute for lawyer
> time, just as paralegal time is, for if prohibited (or
> deterred by the cost) from hiring an expert the
> lawyer would attempt to educate himself about the
> expert's area of expertise. To forbid the shifting of
> the expert's fee would encourage
> underspecialization and inefficient trial
> preparation, just as to forbid shifting the cost of
> paralegals would encourage lawyers to do
> paralegals' work.

*Friedrich v. Chicago*, 888 F.2d 511, 514 (7th Cir. 1989).[19]

We agree with this logic. The purposes of RCRA's fee-shifting provision would not be well-served by prohibiting reimbursement for the fees of non-testifying experts, at least to the extent that these experts serve to "educate counsel in a technical matter germane to the suit." It is not unreasonable to expect that attorneys will rely on experts to educate them as to scientific and technical issues involved in a given case. Indeed, as the Seventh Circuit observed, prohibiting reimbursement for the fees of non-testifying experts would simply encourage attorneys to educate themselves, undoubtedly at a higher cost. Thus, we will affirm the District Court on this point.

## VIII. Copying Costs

The District Court awarded Terris $148,715 in copying costs. This award posited a cost of 20 cents per page claimed for

---

[19]*Friedrich*, a decision interpreting 42 U.S.C. § 1988, was vacated and remanded for reconsideration, *see* 499 U.S. 933 (1991), in light of *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991), which held that § 1988 did not permit non-testifying expert fees to be shifted to the government. *Casey* has been superceded by statute. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994) (observing that "§ 113 [of the Civil Rights Act of 1991] responds to [*Casey*] by providing that an award of attorney's fees may include expert fees").

internal copying; external copying was billed at cost. While the District Court acknowledged that this 20 cents per page rate was higher than the "10 to 15 cents deemed reasonable by most federal courts," 336 F. Supp. 2d at 400 n.7, it concluded that 20 cents was acceptable.

This Court taxes copying costs at 10 cents per page. *See* Third Circuit L.A.R. 39.3(c). As the District Court found, most courts to consider the issue have found that a rate of 10 to 15 cents per copy is appropriate.[20] We have serious concerns about the District Court's decision to grant ICO reimbursement at the rate of 20 cents per page. We judicially notice that Fed Ex/Kinko's charges less than 7 cents per page for large volume copying. The District Court did note that different types of copies have different costs; obviously color copies are more expensive than black and white ones. However, it is not clear from the record whether ICO's attorneys performed their more expensive copying in house.

The District Court seems not to have given this aspect of the case sufficient attention. Since we are remanding so many aspects of the award, we will also vacate and remand on this issue for fuller consideration.[21] In the same vein we will also vacate and remand for a more adequate review of the number of copies made by plaintiffs. ICO's attorneys submitted documentation for their internal and external copying, and the District Court concluded that the total number of copies was not excessive. But ICO requested reimbursement for 387,619 internal copies, and an unknown number of external copies. Thus, more than a conclusory ruling is called for.[22]

---

[20]On two occasions, district judges in this Circuit have found that 25 cents per copy was a reasonable amount to charge. *See James v. Norton*, 176 F. Supp. 2d 385, 400 (E.D. Pa. 2001); *Churchill v. Star Enters.*, 1998 U.S. Dist. LEXIS 6068 at 29-30 (E.D. Pa. Apr. 17, 1998) (unpublished opinion).

[21]We affirm the award for external copying, which was billed at cost.

[22]ICO concedes that its copying award should be reduced by $53.40 for copying relating to the other defendants. The District

IX. Costs of Overtime and Temporary Employees

Finally, Honeywell challenges the District Court's decision to compensate ICO for overtime costs, the costs of temporary employees, and the cost of meals associated with overtime. The Court correctly noted that overtime and related costs are only reimbursable "where there is a need for the additional employee or overtime, such as with an emergency." *See* 336 F. Supp. 2d at 401. Honeywell argues that the District Court misapplied this principle, as it failed to identify "a single instance in which the incurrence of temporary employee costs, staff overtime, or overtime meal costs corresponded to an unavoidable emergency."

Honeywell is correct that overtime costs may only be reimbursed when reasonably necessary. However, the District Court concluded that the amount of overtime at issue—97.75 hours over approximately nine years—was reasonable in light of "the complexity of the litigation and the tremendous number of documents that were produced and deadlines set by this Court." *Id*. at 402. We agree with the District Court that, in a complex, multi-year action such as this, a certain amount of overtime is inevitable. The amount at issue in this case (just over ten hours per year) does not strike us as at all excessive. Moreover, the District Court has a far greater understanding of the deadlines it imposed and the complexity of the underlying action. For this reason, we find that the District Court's conclusion that the amount of overtime and related costs claimed by ICO was justified by the complexity of the underlying action and the deadlines set by the Court was not an abuse of discretion. We will therefore affirm this portion of the fee award.

---

Court also awarded ICO $17 for copying expenses related to the two *in limine* motions filed by Grace discussed above. *See supra* Part VI. If the District Court determines that the time spent by ICO's attorneys contesting these motions may not be charged to Honeywell, then it should reduce the photocopying award accordingly. We realize that these sums are tiny in the grand scheme of things, but we mention them in the interest of completeness.

X. Summary

To summarize, we affirm the award in all respects with the exception of the following charges:

- We will vacate that portion of the award associated with the six specific charges referenced above (the time spent preparing pretrial and post-trial findings of fact and conclusions of law; the time "dedicated to matters related to the pretrial order"; the time spent reviewing documents; the time spent preparing a motion for summary judgment; and the total award of paralegal time), and remand so that the District Court may conduct a more searching analysis of the time claimed by ICO's attorneys.

- We will vacate the $768,791.44 awarded for the work of Dr. Bruce Bell, Dr. Ben Ross, and Dr. Cheryl Montgomery and their respective business entities, so that the District Court may conduct a more thorough analysis of the time claimed by these experts.

- We will vacate the $148,715 for photocopying costs, and remand so that the District Court may conduct a more searching review of the number of copies claimed by ICO as well as the appropriate billing rate for in-house copies.

- We will vacate the $46,970.48 awarded for travel time and travel costs, and remand so that the District Court may make a determination as to the regular practice in the relevant market for billing such time.

- We will vacate the portion of the award, including the $70.40 in photocopying costs, relating to the time spent on motions which Honeywell alleges involve other defendants. On remand, the District Court shall consider whether the 41.78 hours ICO claims relating to the two *in limine* motions filed by Grace were related to its suit against Honeywell.

- Finally, we will vacate the award of $541.08 relating to

"local travel expenses" which the District Court neglected to deduct from its final award.  ICO does not contest this reduction.  *See supra* note 3.