**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-3813 and 11-3814
_____

INTERFAITH COMMUNITY ORGANIZATION;
LAWRENCE BAKER; MARTHA WEBB HERRING;
MARGARET WEBB; WINSTON CLARKE; MARGARITA
NAVAS;
HACKENSACK RIVERKEEPER, INC.; WILLIAM
SHEEHAN

v.

HONEYWELL INTERNATIONAL, INC, F/K/A
Alliedsignal, Inc;
RONED REALTY OF JERSEY CITY, INC.; RONED
REALTY OF UNION CITY, INC.; W.R. GRACE & CO;
ECARG INC; W.R. GRACE LTD;
*KELLOGG STREET 80 PROPERTY; *KELLOGG
STREET
440 PROPERTY, LLC.; *KELLOGG STREET 60
PROPERTY, LLC

Honeywell International, Inc., Kellogg Street 80 Property,
LLC,
Kellogg Street 440 Property, LLC, Kellogg Street 60
Property, LLC

Appellants in No. 11-3913

*(Pursuant to Fed. R. App. P. 12(a))
_____

JERSEY CITY MUNICIPAL UTILITIES AUTHORITY;
ELIZABETH ROSARIO; RAFAEL ROSARIO;
HACKENSACK RIVERKEEPER, INC.; WILLIAM
SHEEHAN;
WINSTON CLARKE; LAWRENCE BAKER;
JERSEY CITY INCINERATOR AUTHORITY

v.

HONEYWELL INTERNATIONAL INC; PAUL TRENK;
STEVE GALLO;
BOB CIASULLI; DEGEN OIL AND CHEMICAL CO;
INLAND SOUTHEAST JERSEY CITY, LLC;
KELLOGG STREET 60 PROPERTY, LLC;
KELLOGG STREET 80 PROPERTY, LLC;
KELLOGG STREET 440 PROPERTY, LLC;
100 KELLOGG STREET, LLC; NEW JERSEY CITY
UNIVERSITY;
JERRAMIAH T. HEALY;
OREN DABNEY, In his official capacity as Director of
Jersey City Incinerator Authority; JOHN YURCHAK, In his
official capacity as Director of
Jersey City Department of Public Works; DANIEL BECHT,
Executive Director of
Jersey City Municipal Utilities Authority;

BAYONNE MUNICIPAL UTILITIES AUTHORITY;
CARLOS M. HERNANDEZ, In his official capacity as
President of New Jersey City University

Honeywell International, Inc., Kellogg Street 80 Property,
LLC,
Kellogg Street/440 Property, LLC, Kellogg Street 60
Property, LLC,

Appellants in 11-3814
_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil Action No. 95-2097)
District Judge: Honorable Dennis M. Cavanaugh
_____

Argued December 20, 2012

Before:   McKEE, *Chief Judge*, SLOVITER and
VANASKIE, *Circuit Judges*

(Filed: July 8, 2013 )

Lisa S. Blatt, Esq. [ARGUED]
Michael D. Daneker
Dirk C. Phillips
R. Stanton Jones
Arnold & Porter
555 12th Street, N.W.
Washington, D.C. 20004
      *Counsel for Appellants*

Bruce J. Terris
Carolyn Smith Pravlick, Esq. [ARGUED]
Michelle Weaver
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, D.C. 20005-4632
      *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

"A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Regrettably, requests for attorneys' fees in this protracted environmental clean-up case have resulted not only in a second major litigation, but a third as well. An earlier multi-million dollar fee award previously brought before us was vacated and remanded for additional review by the District Court. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.* (*ICO II*), 426 F.3d 694 (3d Cir. 2005). We are now confronted with a challenge to another multi-million dollar award. This latest appeal calls upon us to decide whether offers of judgment pursuant to Fed. R. Civ. P. 68 may be made in the context of attorney's fee disputes under the fee-shifting provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq. We are also called upon once again to determine whether the fee award is excessive. Because we conclude that Rule 68 offers of judgment may be made in this context, we will reverse the District Court's declaration that the offers of judgment in this

4

case are null and void as well as its decision to bar any further offers of judgment. And, while we uphold as not clearly erroneous the District Court's decisions with respect to the appropriate hourly rates in this case, we are unable to sustain its conclusions with respect to the number of hours claimed by counsel because the District Court's findings lack sufficient explanation. Accordingly, we will vacate the fee award and remand for further proceedings.

## I. Facts and Procedural History

Mutual Chemical Company of America ("Mutual") operated a chrome manufacturing plant in Jersey City, New Jersey from 1895 to 1954. During that time, the company deposited approximately 1.5 million tons of industrial waste residue containing hexavalent chromium into wetlands along the Hackensack River. (Joint Appendix ["J.A."] 1082-83.) In 1954, Allied Corporation purchased the plant and ended the dumping. Allied Corporation was succeeded by AlliedSignal, Inc., and later by Honeywell International, Inc. ("Honeywell"). Although the dumping stopped, the contaminated area was not cleaned up.

In 1995, the Interfaith Community Organization and five residents of the nearby community (collectively, "ICO"), represented by the Washington, D.C. law firm of Terris, Pravlik & Millian, LLP ("Terris"), filed the original suit against AlliedSignal, then the owner of the site, seeking the cleanup of a contaminated area designated "Study Area 7." ICO sued AlliedSignal under the citizen suit provision of RCRA, which allows individuals to bring a civil action against any person "who has contributed or who is contributing to the past or present handling, storage,

5

treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . ." 42 U.S.C. § 6972(a)(1)(B).

The District Court entered judgment for ICO in 2003, ordering Honeywell (which had succeeded AlliedSignal) to clean up Study Area 7. *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 263 F. Supp. 2d 796, 802 (D.N.J. 2003). This Court affirmed. *See* 399 F.3d 248, 252 (3d Cir. 2005).

In 2004, the District Court awarded ICO more than $4.5 million in fees and expenses for litigating the 1995 action, and also required Honeywell to pay the future fees and costs incurred by ICO in monitoring Honeywell's cleanup. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.* (*ICO I*), 336 F. Supp. 2d 370, 403-04 (D.N.J. 2004). We affirmed in part and vacated in part. *ICO II*, 426 F.3d 694, (3d Cir. 2005). Specifically, we sustained as not clearly erroneous the District Court's decision with respect to the hourly rates sought by ICO's counsel, *id.* at 707-10, but rejected as inadequate the District Court's review of the hours for which compensation was claimed. *Id.* at 711-14. Accordingly, we vacated the fee award and remanded for further proceedings.

In 2005, Hackensack Riverkeeper ("Riverkeeper"), also represented by Terris, filed companion cases against Honeywell stemming from the same contamination but relating to areas adjacent to Study Area 7, designated as "Study Area 5" and "Study Area 6." (J.A. 1140.) The parties entered into a number of consent decrees in which Honeywell conceded responsibility, and agreed to remediate the additional contaminated sites. As part of the consent decrees,

6

Honeywell also agreed to pay $5 million in fees and costs for the expenses incurred prior to the decrees, and to pay "reasonable" future fees and expenses incurred in connection with monitoring Honeywell's remediation efforts. (J.A. 334-35.)

Initially, the parties were able to reach agreement on fees and expenses. Beginning in the fall of 2009, however, Honeywell, on the one hand, and ICO and Riverkeeper (collectively, "Appellees") on the other, failed to reach agreement with respect to the fees sought for monitoring Honeywell's work.

Terris subsequently filed two separate fee applications, totaling more than $700,000, for its monitoring work performed in 2009 and the first half of 2010 in connection with the 1995 case. Terris filed a separate application, seeking almost $2.5 million, for work performed on the 2005 litigation. Honeywell filed objections to the fee applications. Specifically, Honeywell renewed its previously-rejected arguments that the forum rate rule should be applied so that the hourly rates sought by Terris should be based upon the rates charged by New Jersey lawyers as opposed to Washington, D.C. lawyers, and that, even if D.C. rates were used, Appellees applied the wrong method for calculating prevailing D.C. market rates. In addition, Honeywell once again contested the reasonableness of the hours and expenses claimed by counsel. Honeywell also served offers of judgment pursuant to Rule 68 for the disputed fees. In response, Appellees asked the District Court to issue a declaratory judgment that Honeywell's Rule 68 offers are null and void in the context of RCRA citizen suits.

On September 8, 2011, the District Court issued an opinion that substantially upheld the Appellees' fee request. First, the District Court once again ruled that the forum-rate rule need not be applied in this case so that Terris could be paid Washington, D.C. rates for work relating to a dispute in New Jersey. *Interfaith Cmty. Org.v. Honeywell Int'l, Inc.* (*ICO III*), 808 F. Supp. 2d 744, 749-50 (D.N.J. 2011). Second, the District Court evaluated two different methods for calculating prevailing D.C. market rates, and approved the method requested by Appellees. *Id.* at 750-51. Third, the District Court rejected most of the challenges to the reasonableness of the hours expended by Appellees' counsel. *Id.* at 751-55. And, finally, the District Court held that Rule 68 offers of judgment cannot be made in citizen suits filed under RCRA, concluding that application of Rule 68 to RCRA citizen suits would violate the Rules Enabling Act, 28 U.S.C. § 2072, by discouraging the very citizen suits that Congress intended to promote. *Id.* This appeal followed.

## II. Discussion

The District Court had jurisdiction under 42 U.S.C. § 6972(a), the citizen suit provision of RCRA, and we have appellate jurisdiction under 28 U.S.C. § 1291. We "review the legal interpretation of procedural rules de novo." *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 286 (3d Cir. 2007). The standard the district court should "apply in calculating a fee award is a legal question subject to plenary review," *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 358 (3d Cir. 2001), but "[t]he determination of the appropriate billing rate is a factual finding which [this Court] review[s] for clear error." *ICO II*, 426 F.3d at 709. Finally, the amount of a fee award is within

8

the district court's discretion, and we will not disturb the district court's "determination of . . . the number of hours reasonably expended absent clear error." *Evans*, 273 F.3d at 358.

## A. Rule 68 Offers of Judgment

We must first decide whether offers of judgment made pursuant to Federal Rule of Civil Procedure 68 apply to attorney's fee disputes brought under the citizen suit provision of RCRA. As the Supreme Court has instructed, "[w]e give the Federal Rules of Civil Procedure their plain meaning, and generally with them as with a statute, [w]hen we find the terms unambiguous, judicial inquiry is complete." *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 123 (1989) (quotation marks omitted). Thus, we begin, as we must, with the text of the rule. *See United States v. Gonzales*, 520 U.S. 1, 4 (1997).

Federal Rule of Civil Procedure 68 provides, in pertinent part:

> **(a) Making an Offer; Judgment on an Accepted Offer.** At least 14 days before the date set for trial, a party defending a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. . . .
>
> . . . .
>
> **(c) Offer After Liability is Determined.** When one party's liability to another has been

determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. . . .

**(d) Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68(a), (c)-(d)

Rule 68 does not exempt from its purview any type of civil action. *See* 12 C. Wright & A. Miller, Federal Practice & Procedure § 3001.1 (2d ed. 1987). Moreover, Rule 1 of the Federal Rules of Civil Procedure states that the rules apply to "all suits of a civil nature," unless exempted by Rule 81. Fed. R. Civ. P. 1. Rule 81, in turn, does not set forth any restrictions on Rule 68's applicability to citizen suits under RCRA, or to suits seeking equitable relief generally. Thus, by its plain terms, Rule 68 is applicable to RCRA citizen suits.

The District Court, however, held that Rule 68 is so incompatible with Congress' purpose in enacting RCRA that its application to cases brought under § 6972 would violate the Rules Enabling Act, 28 U.S.C. § 2072. The Rules Enabling Act gives the Supreme Court the power to "prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts . . . and the courts of appeals," provided that "such rules [do] not abridge, enlarge or modify any substantive right." § 2072(a)-(b). Thus, if applying Rule 68 to § 6972 citizen suits abridges

or modifies a substantive right, then Rule 68 offers are void in this context notwithstanding the plain meaning of the rule.

A rule of procedure does not run afoul of this statutory limitation merely because it "affects a litigant's substantive rights; most procedural rules do." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1442 (2010) (Scalia, J., plurality opinion). As Justice Scalia elaborated: "What matters is what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* (quoting *Mississippi Pub'g Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).

Applying the criterion that a rule of procedure impermissibly "abridge[s], enlarge[s], or modif[ies] [a] substantive right," 28 U.S.C. § 2072(b), only if it alters the rules for adjudicating a litigant's rights, we readily conclude that application of Rule 68 in the specific context of this case does not violate the Rules Enabling Act. No rule of decision governing the adjudication of the attorney's fee dispute that is the subject of Honeywell's offers of judgment is affected by application of Rule 68. The amount of the fee to be awarded remains governed by the same rules of decision regardless of the interposition of an offer of judgment. At best, the only impact that Rule 68 has on the ultimate outcome of the attorney's fee dispute is to require Appellees to bear their post-offer costs, including counsel fees, if the fee award is

less favorable than the offer of judgment.[1]  *See* Fed. R. Civ. P. 68(d); *Marek v. Chesny*, 473 U.S. 1, 11-12 (1985).[2]

In light of Rule 68's laudatory purpose of facilitating settlement, *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352 (1981), the requirement that a plaintiff bear the fees incurred after it rejects an offer of judgment simply cannot be said to abridge some substantive right.  In this regard, fees incurred

---

[1] Presumably, the only post-offer fees that may have to be borne by a plaintiff in the context presented here would be for time expended to continue to litigate the attorney's fee dispute.  In this context, therefore, the plaintiff is presented with the classic risk/reward consideration in evaluating any settlement offer: is it probable that continuation of the litigation will achieve an outcome that is worth more than the offer plus the costs incurred after the offer is received.

[2] *Marek* held that where a statute includes attorney's fees within the term "costs," such as 42 U.S.C. § 1988 does, "a defendant is not liable for the post-offer attorney fees of a rejecting offeree who obtains a judgment not more favorable than the offer."  13 J. Moore, Moore's Federal Practice § 68.08[4][a] (3d ed. 2011).  The citizen suit provision of RCRA provides that "[t]he court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate." 42 U.S.C. § 6972(e).  Thus, under *Marek*, Appellees could not recover post-offer fees if the amount ultimately awarded to them was less than the corresponding offer of judgment.

after a party rejects an offer of judgment and recovers less than the offer are properly viewed as being unreasonable.

The District Court, relying upon *Public Interest Research Group of New Jersey v. Struthers-Dunn, Inc.*, Civ. A. No. 87-1773, 1988 WL 147639 (D.N.J. Aug. 16, 1988), reasoned that Rule 68 offers would discourage citizens from bringing suit and firms from accepting the cases, because there is no possibility for monetary relief in citizen suits and, therefore, the only source of compensation for law firms representing plaintiffs in these cases comes in the form of an award of attorney's fees. *ICO III*, 808 F. Supp. 2d at 756-57. The impact on a decision to pursue litigation, however, has nothing to do with whether the offer of judgment rule abridges or modifies some substantive right. It may very well be that a Rule 68 offer of judgment in the context of a RCRA attorney's fee dispute will require a plaintiff to make a hard choice between accepting what has been offered versus adjudicating the issues that are in dispute in such a case -- the appropriate hourly rate and the reasonableness of the hours expended. That Appellees may feel compelled to take less than the amount to which they believe they are entitled, however, has nothing at all to do with the determination of the appropriate hourly rate and the reasonableness of the hours expended before the offer of judgment was made. Settlement offers often present difficult choices for a plaintiff, but that fact neither abridges nor modifies the substantive rights at issue. Speculation as to the potential "chilling" effect of allowing Rule 68 offers of judgment in citizen suits under RCRA, advanced in *Struthers-Dunn* and embraced by the District Court in this case, is simply irrelevant to the pertinent inquiry: whether the rules of decision are altered by the offer of judgment.

13

The Supreme Court has not considered Rule 68's impact on § 6972 citizen suits, but it has addressed the interaction between Rule 68 and the fee-shifting statute applicable to civil rights litigation, 42 U.S.C. § 1988. *See Marek*, 473 U.S. 1. While the majority opinion in *Marek* did not address whether application of Rule 68 in the context of civil rights litigation violated the Rules Enabling Act, its rationale is indeed instructive here. In *Marek*, the Court considered whether post-offer of judgment "costs" to be borne by the plaintiff included plaintiff's attorney's fees when the ultimate recovery was less than the offer. *Id.* at 3. Stated otherwise, the issue in *Marek* was whether a plaintiff who received a verdict that was less than the offer of judgment could recover the fees incurred after the offer was made. The plaintiffs in *Marek* argued that a recovery of less than the offer of judgment should not preclude an award of all counsel fees, including post-offer fees. *Id.* at 4. Much like the argument advanced by Appellees in this case, the *Marek* plaintiffs asserted that a different reading of Rule 68 would unfairly burden civil rights plaintiffs by discouraging attorneys from bringing meritorious claims at the risk of losing attorney fees. *Id.* Notwithstanding the strong policy arguments favoring the encouragement of suits to vindicate important constitutional rights, the Court applied the plain meaning of Rule 68 to foreclose recovery of post-offer fees. The Court concluded that the purpose of § 1988 (to encourage meritorious civil rights claims) was distinct from and compatible with the purpose of Rule 68 (to encourage settlement). *Id.* at 11. Thus, the Court held that "nothing . . . in the policies underlying § 1988 constitutes 'the necessary clear expression of congressional intent' required 'to exempt .

14

. . [the] statute from the operation of Rule 68." *Id.* at 11-12 (citing *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)).

Appellees argue that *Marek* is distinguishable because civil rights plaintiffs are often motivated by the potential for personal gain, in contrast to RCRA plaintiffs, who seek injunctive relief in furtherance of a purely public gain.[3] Although Appellees are correct that citizen plaintiffs suing under § 6972 cannot recover monetary damages, while plaintiffs in civil rights cases often can, they miss the point of the Court's analysis in *Marek*. The Court sustained application of Rule 68 to civil rights cases even though it could chill the pursuit of litigation intended to vindicate important rights. The Court concluded that, notwithstanding such potential, Rule 68 applied because the policies underlying Rule 68 and the fee shifting statute at issue there were compatible.[4]

---

[3] Private citizens bringing suit under 42 U.S.C. § 6972 are limited to mandatory and prohibitory injunctive relief. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996).

[4] *Struthers-Dunn*, 1988 WL 147639, on which the District Court relied to void the offers of judgment in this case, involved a Rule 68 offer of judgment in a somewhat different context than that presented here. At issue in *Struthers-Dunn* was the defendant's liability, not only for attorney's fees, but also for monetary penalties for established violations of the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.* Any monetary penalties in the citizen suit under the Clean Water Act would be payable, not to the plaintiffs, but to the United States government. *Struthers–Dunn*, 1988 WL 147639, at *2. Plaintiffs in *Struthers-Dunn* argued, as do

Appellees here, that application of Rule 68 served as a disincentive to bring a citizen suit, because plaintiffs did not have the possibility of receiving a monetary recovery and yet faced the specter of having to pay their own fees as well as defense costs, that could include defense counsel fees, if their ultimate recovery was less than the offer of judgment. The District Court in *Struthers-Dunn* observed that "[n]ot even the most altruistic litigant can be expected to persevere under such circumstances." *Id*. at \*4. *Struthers-Dunn*, however, did not apply the correct criterion: whether Rule 68 changes the rule for adjudicating the parties' substantive rights. Significantly, applying this criterion, the Supreme Court has rejected every Rules Enabling Act challenge to a rule of procedure. *Shady Grove*, 130 S. Ct. at 1432. Accordingly, the conclusion in *Struthers-Dunn* is fatally flawed.

*Struthers-Dunn* is fatally flawed for another reason: its rationale rested on the unsound assumptions that plaintiffs could not recover any fees in the event that the ultimate recovery was less than the offer, *see id.* at \*4 ("plaintiffs in the present action would . . . be precluded from an award of attorney's fees if they obtained a judgment less favorable than defendant's Rule 68 offer"), and that plaintiffs may have to pay defense counsel fees incurred after the offer was made. *See id.* at \*4, n.7("[I]f plaintiffs' incentive to vigorously prosecute this action would be chilled by the risk of having to pay defendant's costs, then plaintiffs' desire to pursue this litigation would be overcome from exposure at the prospect of being held accountable for defendants' attorney's fees.") Contrary to the District Court's statement, a plaintiff who prevails on a fee-shifting claim is entitled to fees incurred before the offer of judgment. *See Marek,* 473 U.S. at 4.

16

The fact that only equitable relief is available under section 6972 does not alter this conclusion. Courts have applied Rule 68 to suits seeking equitable relief despite arguments that doing so would discourage such claims. *See*, *e.g.*, *NAACP v. Town of East Haven*, 259 F.3d 113, 121 n.9 (2d Cir. 2001) ("[N]othing in the Rule suggests that it applies only to cases seeking damages or other relief amenable to simple comparisons."); *Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 522 (7th Cir. 2000) ("Rule 68 offers are much more common in money cases than in equity cases, but nothing in the rule forbids its use in the latter type of case.")

---

Furthermore, where a plaintiff has prevailed on its underlying claim, a defendant in a fee-shifting case cannot recover attorney's fees under Rule 68 because in that circumstance it cannot be said that the plaintiff's action was "'frivolous, unreasonable or without foundation,'" the general standard for awarding fees as part of "costs" to a prevailing defendant. *See Le v. Univ. of Pennsylvania*, 321 F.3d 403, 410-11 (3d Cir. 2003); *see also Emerson Enterprises, LLC v. Kenneth Crosby New York, LLC*, 781 F. Supp. 2d 166, 177 (W.D.N.Y. 2011) ("For a defendant to qualify as a prevailing party [in a RCRA case], it 'must show that the plaintiffs' claim was frivolous, unreasonable, or groundless, or that the plaintiff[ ] continued to litigate after it clearly became so. . . .'"). Thus, the District Court's reliance upon *Struthers-Dunn* in the matter presently before us was misplaced. Allowing offers of judgment in the context of this case does not expose Appellees to a complete denial of counsel fees or to payment of defense attorney's fees.

17

The fee shifting provision of section 6972 encourages plaintiffs to bring meritorious suits to enforce environmental laws, while Rule 68 encourages settlement of civil suits. *See Delta Airlines,* 450 U.S. at 352. "There is nothing incompatible with these two objectives." *Marek*, 473 U.S. at 4 (comparing purposes of §1988 with purposes of Rule 68). Accordingly, we conclude that nothing in the text of Rule 68 suggests that such an exemption is warranted, and application of Rule 68 in the context presented here does not violate the Rules Enabling Act.

Our Rule 68 inquiry is not yet complete, however. Appellees raise another challenge to Rule 68's applicability in this case, contending that the rule does not apply to proceedings after judgment has been rendered on liability. Appellees point to the text of the rule, which states that an offer of judgment must be made "at least 14 days before the date set for trial," or, if "one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings . . . it must be served within a reasonable time . . . before the date set for a hearing to determine the extent of liability." Fed. R. Civ. P. 68(a), (c). Appellees interpret this language to mean that the rule only applies in two situations: first, before a trial; and, second, in a bifurcated proceeding after judgment has been rendered but before the extent of liability is determined.

The first situation plainly does not apply here, and Appellees claim that this case does not fall within the second situation because attorney's fees cannot be regarded as part of Honeywell's liability. Specifically, Appellees assert that the word "liability"—even within the phrase "extent of

liability"—does not encompass a dispute over attorney fees. To support this interpretation of the text, Appellees point to Federal Rule of Civil Procedure 54, which provides definitions of "judgment" and "costs." *See* Fed. R. Civ. P. 54. Because Rule 54 includes attorney fees within the definition of "costs," Appellees argue that fees cannot also be included within the definition of "liability." (Appellee's Br. 55). Further, Appellees observe that "RCRA provides that 'costs of litigation' include 'reasonable attorney and expert witness fees,'" and note that, under *Marek*, Rule 68 "costs" must also include attorney fees. (Appellee's Br. 55-56). Because "costs" include attorney fees for purposes of Rule 68, Appellees argue, attorney fees cannot also be part of "liability." (Id.)

Given the ordinary meaning of "liability," s*ee* Black's Law Dictionary 997 (9th ed. 2009), the phrase "extent of liability" encompasses all legal responsibilities. This appeal is evidence that the extent of Honeywell's liability has yet to be determined.

This conclusion is consistent with our approach in *Public Interest Research Group of New Jersey v. Windall* (*PIRG*), 51 F.3d 1179 (3d Cir. 1995), where we implicitly treated a Rule 68 offer made at the attorney's fee stage of litigation as valid. In *PIRG*, we vacated a fee award and directed the district court to consider on remand whether the plaintiff reasonably continued to litigate the attorney's fee issue after refusing the defendant's Rule 68 offer. 51 F.3d at 1190. *See also Sanchez v. Prudential Pizza*, 709 F.3d 689, 691 (7th Cir. 2013) (indicating that Rule 68 offers may include attorney's fees so long as the offer clearly states that it includes fees and costs).

19

Moreover, the policies underlying Rule 68 support this interpretation. Rule 68 was created to "encourage the settlement of litigation." *Delta Airlines,* 450 U.S. at 352. The benefits of settlement are highest in the context of attorney fee disputes, which the Supreme Court has warned "should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Incentive to settle is beneficial where, as here, the "litigation to resolve fee disputes has . . . taken on a life of its own." *ICO III*, 808 F. Supp. 2d at 749. As the District Court noted, "the amount of litigation engendered by the present fee dispute has probably cost as much as the contested amount." *Id.* at 748. We are confident that encouragement to settle is warranted in this context. Thus, because we believe that a Rule 68 offer in this context both comports with the ordinary meaning of the phrase "extent of liability" and is consistent with the fee-shifting provision of RCRA, we conclude that Rule 68 offers of judgment apply to disputes over attorney fees after liability has been determined.

## B. Forum-Rate Rule

We now turn our attention to the District Court's departure from the forum-rate rule. The forum-rate rule holds that "in most cases, the relevant rate [for calculating attorney fees] is the prevailing rate in the forum of the litigation." *ICO II*, 426 F.3d at 705. We have recognized two exceptions to the rule: "first, when the need for the special expertise of counsel from a distant district is shown; and, second, when local counsel are unwilling to handle the case." *Id.* (internal quotations omitted) (citing *Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237, 261(1985)). We sustained as not clearly erroneous the

District Court's decision in *ICO I* that the forum-rate rule should *not* be applied in this case. *See ICO II*, 426 F.3d at 707.

Considering the issue once again in the instant litigation, the District Court found that Appellees demonstrated that "at least one, if not both, of the exceptions to the forum rate rule still apply." *ICO III*, 808 F. Supp. 2d at 749. We review the District Court's finding that Appellees qualify for an exception to the forum-rate rule for clear error. *ICO II*, 426 F.3d at 705. We will not disturb the District Court's findings as clearly erroneous unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Howe*, 543 F.3d 128, 133 (3d Cir. 2008) (internal quotation marks omitted).

The District Court found that the Appellees met the second exception to the forum-rate rule by demonstrating that local counsel were unwilling to handle the case. In making this finding, the District Court relied on the affidavits of William Sheehan, Riverkeeper's executive director, and Edward Lloyd, the Evan M. Frankel Clinical Professor of Environmental Law at Columbia Law School and former director of the Rutgers University Environmental Law Clinic. Both affidavits support the District Court's finding that an extensive search for New Jersey counsel would have been futile. Specifically, Sheehan's affidavit stated that, because Riverkeeper cannot afford to pay attorneys' fees, it relies on pro bono representation from the Rutgers Environmental Law Clinic and the Eastern Environmental Law Center in New Jersey in the environmental cases in which it participates. Sheehan explained it was his understanding that neither of those organizations would be able to take on larger, more

21

complicated cases such as the Study Areas 5 and 6 litigation. Sheehan further stated that "Riverkeeper has had a difficult time finding legal representation since it does not even have the resources to pay for fees and expenses even in small matters." (J.A. 714.) Finally, Sheehan noted that he has personally had at least six meetings with local New Jersey counsel hoping to convince them to handle various cases for Riverkeeper on a pro bono basis, but to no avail.

Likewise, Lloyd's affidavit also supports the District Court's finding that local counsel would have been unwilling to accept this case. Lloyd stated:

> At the time that the Study Areas 5 and 6 case was initiated in 2005, I was not aware of any New Jersey attorneys or law firms who would have been willing to assume the risks of litigating cases of this type, particularly without contemporaneous payment for their services and expenses.

(J.A. 724.)

Lloyd's affidavit in this case is very similar to the affidavit he filed in support of the fee application in *ICO I*, which we found persuasive when we upheld the District Court's departure from the forum-rate rule in that case. *See ICO II*, 426 F.3d at 707. The primary difference between the two affidavits is that in his affidavit supporting the fee application in this case, Lloyd reiterated that, at the time the

Study Areas 5 and 6 cases commenced, he was still unaware of local counsel willing to take on such a case.

Notwithstanding our explicit reliance on Lloyd's prior affidavit in *ICO II*, Honeywell now argues that Appellees should have been required to conduct an individualized search for New Jersey counsel to handle the Study Area 5 and 6 cases, even if Sheehan and Lloyd's experience in other similar cases taught them that no such counsel would have been available, because "[t]heir assumptions about the unavailability of counsel . . . do not demonstrate the absence of willing New Jersey counsel." (Appellant's Br. 28.)  We are not persuaded by this argument.  Our decision in *ICO II* explicitly credited Lloyd's testimony that he was unaware of willing local counsel, which he based on three decades of experience practicing environmental law in New Jersey. Here, the District Court relied on an additional affidavit that described the difficulty Riverkeeper faces in procuring counsel in even smaller cases due to its inability to pay attorneys' fees.  We once again find no clear error in the District Court's finding that Appellees demonstrated that local counsel are unwilling to handle the case.  Accordingly, we will affirm the departure from the forum-rate rule in this case.[5]

## C. The Laffey Matrix

---

[5] In light of this determination, we need not address whether the District Court erred in finding that Appellees also met the first exception by demonstrating that local counsel did not have the "special expertise" necessary to represent ICO.

Because we have sustained the District Court's decision to allow Terris to be compensated on the basis of Washington, D.C. rates, we must now determine whether the District Court erred in deciding what these rates are. In this case, the District Court applied what is known as the "Laffey Matrix" for purposes of determining the appropriate hourly rates. [6] The Laffey Matrix "provides billing rates for attorneys in the Washington, D.C. market with various degrees of experience." *ICO II*, 426 F.3d at 708. The original Laffey Matrix set forth the prevailing market rates from 1981-1982. In 1989, the Laffey Matrix was updated to account for inflation. *See Trout v. Ball*, 705 F. Supp. 705, 709 n.10 (D.D.C. 1989) (approving updated Laffey Matrix). Since 1989, courts have approved various methods for updating the Laffey Matrix. *Compare Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2011) (utilizing legal services component of the Consumer Price Index) *with M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Ass'n*, No. 05-1823, 2007 WL 950071, at *5 (D.D.C. 2007) (applying U.S. Attorney Office Matrix).

The parties agree that the initial Laffey Matrix was a valid index of Washington, D.C. rates in 1982. The parties further agree that an updated version of the Laffey Matrix, which accounts for the rise in prevailing rates based on inflation, would be a valid vehicle for determining the applicable hourly rates in the D.C. legal market today. The

---

[6] The Laffey Matrix was first utilized in *Laffey v. Nw. Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (*en banc*).

parties disagree, however, about the proper method of updating the matrix. Appellees favor the Legal Services Index ("LSI") method, which accounts for "shifts in the consumer price index for legal services nationwide." *ICO III*, 808 F. Supp. 2d at 750. Honeywell prefers the U.S. Attorney Office ("USAO") matrix, which "regularly updates the Laffey Matrix using the Consumer Price Index for the D.C. area." (Appellant's Br. 31.) These divergent methods result in very different prevailing rates.[7] This Circuit has not specifically

---

[7] The U.S. Attorney Matrix yields the following rates for 2010-2011:

| Years of Experience | Hourly Rate |
| --- | --- |
| 20+ | $475 |
| 11-19 years | $420 |
| 8-10 years | $335 |
| 4-7 years | $275 |
| 1-3 years | $230 |
| paralegals | $135 |

The LSI-updated Matrix yields the following rates for 2010-2011:

| Years of Experience | Hourly Rate |
| --- | --- |
| 20+ | $709 |
| 11-19 years | $589 |
| 8-10 years | $522 |
| 4-7 years | $362 |
| 1-3 years | $293 |
| paralegals | $161 |

(JA 935-36.)

approved of either method, and both parties cite cases from the District of Columbia in support of their respective preferred methods.

Appellees point to *Salazar* in support of their preference for the LSI index. *See Salazar*, 123 F. Supp. 2d at 15. In that case, the District Court for the District of Columbia weighed the advantages and disadvantages of both the LSI index and the USAO matrix and determined that the LSI method "more accurately reflects the prevailing rates for legal services in the D.C. community."[8] *Id.* In contrast, Honeywell cites multiple decisions applying the USAO matrix rather than the LSI-updated matrix. *See*, *e.g.*, *Heller v. District of Columbia*, No. 03-213, 2011 WL 6826278, at *8-10 (D.D.C. 2011); *Hayes v. D.C. Pub. Sch.*, 815 F. Supp. 2d 134, 143 (D.D.C. 2011); *M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Ass'n*, No. 05-1823, 2007 WL 950071, at *5 (D.D.C. 2007).

---

[8] Specifically, the *Salazar* court explained that the advantage of the LSI index is that it is based on the "legal services component of the Consumer Price Index rather than the general CPI on which the [USAO matrix] is based." The *Salazar* court further explained that, although the advantage of the USAO Matrix is its reliance on data that is specific to the Washington, D.C. area, "the market for legal services in complex federal litigation in Washington, D.C. is not a local market." *Id.* at 14, 15 n.5 (citing affidavit of Michael Kavanaugh ¶ 15). Thus, the *Salazar* court concluded that the LSI-updated Laffey Matrix was preferable to the USAO index. *Id.* at 15.

The District Court, recognizing that "our Circuit has yet to specifically approve either version of updating the Laffey Matrix," was persuaded by the methodology in *Salazar*. *ICO III*, 808 F. Supp. 2d at 750. Furthermore, the District Court relied on this Court's prior opinion affirming use of the LSI methodology. *See ICO II*, 426 F.3d at 709-10; *ICO III*, 808 F. Supp. 2d at 750 ("[T]he Court will rely on the holding in the previous [*ICO II*]."). In *ICO II,* we stated:

> [W]e do agree . . . that the simple fact that numerous courts in the District of Columbia have upheld the U.S. Attorney's Matrix as a reasonable measure of billing rates is not a sufficient ground for us to conclude that reliance by the District Court on [plaintiffs'] updated Laffey Matrix was clearly erroneous.

*ICO II*, 426 F.3d at 709-10.

We review the District Court's determination of the appropriate billing rate for clear error. *ICO II*, 426 F.3d at 709. Clear error exists only where factual findings "are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." *United States v. 6.45 Acres of Land*, 409 F.3d 139, 145 n.10 (3d Cir. 2005). In light of our prior decision affirming the LSI methodology, as well as the District Court's assessment of the *Salazar* court's reasoning as persuasive, we will not now hold that it

was clear error to once again rely on the LSI method. We thus affirm the District Court's use of the LSI-updated Laffey Matrix to determine the prevailing rates in the Washington, D.C. market.

### D. The Reasonableness of the Hours Expended

Although we have a sufficient record for sustaining the District Court's determinations as to the appropriate hourly rates, we cannot say the same with respect to the other component of the fee calculation: the reasonableness of the hours expended by Terris. As we remarked in *ICO II*,

> [a] prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."

426 F.3d 711 (quoting *PIRG*, 51 F.3d at 1188) (internal quotation marks omitted).

The District Court "has 'a positive and affirmative function in the fee fixing analysis, not merely a passive role.'" *Id.* at 713 (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001)). And, where, as here, an objecting party has challenged specific types of work and

states why it is contended that the hours claimed are excessive, the reviewing court must support its findings with a sufficient articulation of its rationale to allow for meaningful appellate review. *Id.*

Here, Honeywell did identify specific categories of work for which the hours claimed were purportedly unreasonable. Specifically, Honeywell objected to the following:

- 299 hours, amounting to $131,532 in fees, for lobbying activities.[9]
- Approximately 2,400 hours, or nearly $1 million in fees, for identifying and supervising experts.
- More than 1,300 hours, approximating $600,000, to conduct a few Rule 30(b)(6) depositions.
- More than 2,600 hours, exceeding $400,000 in fees, for document or database management.
- Over 1,300 hours, resulting in more than $400,000 in fees, for document review.
- 837 hours, totaling $271,824 in fees, for "pretrial work."
- 331 hours, totaling more than $125,000, for remediation of one residential property.

---

[9] Although acknowledging that it was not likely that such work "was 'crucial to safeguard the interests asserted," the District Court approved 75% of the time expended. *ICO III*, 808 F. Supp. 2d at 754 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 478 U.S. 546 (1986)). No explanation was given as to why this amount of time on a clearly collateral matter was reasonable.

- 242 hours, amounting to more than $100,000 in fees, for financial assurances from Honeywell
- 578 hours, exceeding $400,000 in fees, for Bruce Terris's time overseeing the work of the other Terris partners.
- Almost 2,300 hours, amounting to over $1 million in fees, for intra-office conferencing.[10]
- Expert witness expenses totaling more than $1.3 million.

Although decrying the litigation tactics employed by Terris as "distasteful," "aggressive," and "unsavory," *id.* at 751, 753, the District Court nonetheless chose to "credit[] [Appellees'] arguments . . . as to the reasonableness of the legal and expert fees, expenses and hours charged," explaining that it "will not second guess the staffing decisions of either the Terris firms or its experts . . . ." *Id.* at 754-55. This perfunctory statement does not allow for meaningful appellate court review. As we said in *ICO II*, "where the opinion of the District Court 'is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings." 426 F.3d at 713 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000)). Accordingly, we must once again vacate the District Court's latest fee awards and remand for further proceedings.[11]

---

[10] The District Court reduced the fees in this category by 10%, but gave no explanation as to why a 10% reduction was adequate. *ICO III*, 808 F. Supp. 2d at 753.

[11] We respectfully suggest that the District Court consider the appointment of a Special Master to review the

## III.

For the foregoing reasons, we will reverse the District Court's ruling that Rule 68 offers of judgment are inapplicable in the context of environmental citizen suits brought under RCRA, direct that the previously made offers of judgment be reinstated, affirm the District Court's departure from the forum-rate rule because review of this issue is barred by collateral estoppel,  affirm the District Court's application of the LSI-updated Laffey Matrix, vacate the District Court's fee award, and remand the case for further proceedings consistent with this opinion.

---

fee applications in these now-consolidated matters. The fee requests present a daunting task to a busy District Court, which must handle a multitude of matters with limited resources. A report from a Special Master, who could be compensated equally by both Honeywell and Appellees, may facilitate the District Court's requisite "thorough and searching analysis" of the law firm's billing records. *ICO II*, 426 F.3d at 711 (quoting *Evans*, 273 F.3d at 362). We leave to the District Court's discretion, however, whether to enlist the services of a Special Master, as well as whether to conduct an evidentiary hearing on Honeywell's objections to the number of hours for which Terris claims compensation.